IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IMELDA RECINOS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:09-CV-2114-N-BK |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the District Court's order of reference dated June 28, 2010, this case has been referred to the undersigned for Findings, Conclusions, and Recommendation. For the reasons set forth herein, it is recommended that the decision of the Commissioner of Social Security be affirmed.

**I. BACKGROUND**[1]

**A.  Procedural History**

Imelda Recinos (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act (Act). On June 26, 2006, Plaintiff filed for SSI and DIB, claiming that she had been disabled since October 31, 2001, due to carpal tunnel syndrome, diabetes, back problems, obesity, and problems with eyesight. (Tr. at 89, 92-95, 102). Her application was denied initially and on

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

1

reconsideration, and Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 65, 69-73, 77-83). Plaintiff personally appeared and testified at a hearing held in June 2008. (Tr. at 421-54). On August 18, 2008, the ALJ issued his decision finding Plaintiff not disabled, which Plaintiff timely appealed to the Appeals Council. (Tr. at 8,19). In July 2009, the Appeals Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner. (Tr. at 3-7). Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g).

**B.** **Factual History**

 **1.** **Age, Education, and Work Experience**

Plaintiff was born on September 21, 1961, and was 46 years old at the time of the ALJ's decision. (Tr. at 19-29, 89). She has a high school education, a year of college education, and a year of medical assistant school education, along with prior work experience as an outpatient receptionist and a medical assistant. (Tr. at 95-96, 192, 449-51).

 **2.** **Medical Evidence**

On October 26, 2005, Dr. Jesse Ingram completed a psychological evaluation of the Plaintiff and found Plaintiff pleasant, of average articulation, and well oriented to person, place, and time. (Tr. at 296-300). Dr. Ingram further found Plaintiff's concentration, judgment, and insight fair with no evidence of delusions or suicidal thoughts. (Tr. at 296-300). In addition, Dr. Ingram assessed Plaintiff with a global assessment of functioning ("GAF") score of 50 and stated Plaintiff was severely depressed. (Tr. at 299-300).

From January to May 2006, Dr. Maluana Crivens Hogan conducted counseling sessions for Plaintiff. (Tr. at 276-295). Dr. Hogan's treatment focused on Plaintiff's stress and anxiety in

2

order to facilitate her return to work. (Tr. at 276-295). Dr. Hogan recommended that Dallas Metrocare Services evaluate Plaintiff for pyschotropic medications, but did not place any work restrictions on Plaintiff. (Tr. at 276-295).

On September 26, 2006, Barbra Susanne Fletcher, Psy. D., completed a psychological examination of the Plaintiff and diagnosed Plaintiff with depression, anxiety, and stress. (Tr. at 194). Based on her examination, Dr. Fletcher assessed Plaintiff with a GAF score of 53. (Tr. at 194). Dr. Fletcher noted Plaintiff reported her symptoms to include tearfulness, sleep disturbance, decreased energy, decreased motivation to activity, decreased motivation to maintain hygiene, social withdrawal, problems with concentration and memory, occasional fleeting suicidal ideation, avowing behavior, and muscle tension. (Tr. at 191-94). During Dr. Fletcher's examination, Plaintiff complained of occasionally seeing shadows when nothing was there and believed her eyes were "going out." (Tr. at 191). However, Dr. Fletcher also stated she found no evidence of thought disorder, looseness of association, delusions, obsessions, illogical thinking, or hallucinations and opined that Plaintiff's symptoms should improve with treatment. (Tr. at 191-94).

Gilbert Melchor, Clinical Manager at Dallas Metrocare Services opined Plaintiff suffers from major depressive disorder, panic disorder, and obsessive-compulsive personality disorder, with a GAF of 35. (Tr. at 349). Dallas Metrocare Services treated Plaintiff for depression and anxiety from February to May 2007. (Tr. at 341-372). On February 9, 2007, Plaintiff was described as having an organized thought process, alert and oriented, having good insight, judgment, and impulse control, and anti-depressant medication was prescribed for Plaintiff's depression, which Plaintiff reported helped. (Tr. at 364, 371-72).

The record also contains medical records concerning Plaintiff's wrist and hand impairments. In 1998, Plaintiff underwent a wrist release, but later complained to Dr. Narendra Patel of a constant, sharp, arching, and nagging pain radiating into her right forearm and elbow area. (Tr. at 196). Dr. Patel noted Plaintiff was diagnosed with bilateral carpal tunnel syndrome and additionally noted Plaintiff also suffers from diabetes which may complicate her carpal tunnel syndrome. (Tr. at 196). According to Dr. Patel, Plaintiff could perform personal hygiene, button shirts, pick up small objects with her hands and fingers, had a full range of motion in both of her wrists, and had no swelling, effusion, redness, crepitus, or joint deformity in her wrist. (Tr. at 197-98). In addition, the Rehab Group indicates Plaintiff's disability as pain in the wrists and carpal tunnel syndrome. (Tr. at 296). Medical records from Parkland Health and Hospital system note Plaintiff's hand and wrist pain as being a 9 on a scale of 1-10, without medication, and a 4 with medication. (Tr. at 218). In response, Parkland provided Plaintiff with wrist splints to alleviate some of Plaintiff's pain and noted Plaintiff would benefit from skilled occupational therapy. (Tr. at 218).

### 3. Hearing Testimony

The ALJ held a hearing on June 3, 2008. (Tr. at 419). At the hearing, Plaintiff was represented by counsel and testified along with two medical experts, Dr. Alexander Steel and Dr. Beth Maxwell, and a vocational expert, Dr. Thomas Irons. (Tr. at 419-54). Dr. Steel opined that after reviewing the evidence set forth in the file, Plaintiff did not equal any of the listings. (Tr. at 423-24). Dr. Steel further stated that Plaintiff's obesity would make it difficult for her to perform certain activities at the work site, such as climbing ladders, ropes, and scaffolds, and working at unprotected heights. (Tr. at 425).

Dr. Steel stated that based on the records, "he does not know what is causing the Plaintiff's alleged wrist pain" and "would not be able to say there's any contra indication to sedentary work and probably not to light work." (Tr. at 425). The maximum weight Dr. Steel would place on Plaintiff to lift and carry would be ten to twenty pounds. (Tr. at 426). Dr. Steel further opined Plaintiff could stand, walk, or sit for six to eight hours and Plaintiff should have no trouble using her hands. (Tr. at 426). Dr. Steel did not believe the medical evidence supported Plaintiff's continuous complaints of pain in her right wrist because there is nothing in the record regarding the complaints between 1999 and 2006. (Tr. at 427-28). Furthermore, Dr. Steel believed Plaintiff's diabetes is not well controlled. (Tr. at 430).

In addition, Dr. Maxwell opined that after reviewing the evidence set forth in the file, Plaintiff did not equal any of the listings. (Tr. at 432). Dr. Maxwell stated Plaintiff had been previously diagnosed with anxiety disorder and major depressive disorder, but the records indicate she did not take medication until February 2007. (Tr. at 432). Dr. Maxwell further opined that if the Plaintiff were her patient, she would describe her activities of daily living as "really mild," social as moderate, concentration and pace as moderate, and decompensation as zero. (Tr. at 432-34). Additionally, Dr. Maxwell acknowledged Plaintiff's GAF scores of 50, 53, and discounted the GAF score of 35 as not consistent with the rest of the file. (Tr. at 434-37).

The ALJ asked the vocational expert to consider the hypothesis of a person of the Plaintiff's age, with one year of college education, and Plaintiff's past work history, with restrictions of lifting or carrying a maximum of 20 pounds occasionally and 10 pounds frequently and limited balancing activities and climbing ladders, ropes, scaffolds or working at unprotected heights or around dangerous moving machinery, but who had the ability to stand, sit, walk, and

5

eat for six hours out of an eight hour day. (Tr. at 448-49). The hypothetical included external limitations of (1) mild for activities of daily living, (2) moderate for social functioning, concentration, pace, and persistence as moderate, and (3) decomposition as none. (Tr. at 449). Based on the ALJ's hypothetical, Dr. Irons opined that Plaintiff could perform her past relevant work as an outpatient receptionist in a doctor's office or a medical assistant. (Tr. at 449-51).

Plaintiff then testified she lives in a house with her husband who is blind, disabled, and in need of assistance. (Tr. at 439-40). Plaintiff asserted the most she can pick up is a bag of potatoes and her daily activities include watching TV, washing dishes, and folding clothes. (Tr. at 441). Plaintiff does not engage in heavy activities because her back hurts and "stuff that used to take 10 minutes, now takes [her] forever to finish." (Tr. at 442). Plaintiff shops for groceries once a month and usually cooks in a crockpot or microwave because she forgets to turn the stove off. (Tr. at 442-43). Plaintiff's husband helps her do the laundry; and everything she does has to be done sitting down because her back always hurts. (Tr. at 444). Plaintiff avers she cannot function without her pills and if she does not take her pills "[she] can't do anything." (Tr. at 444). She drops everything she holds in her right hand. (Tr. at 225). Her pain in her back, hip, legs, and feet keep her from working. (Tr. at 445). Plaintiff further averred she suffers from numerous ailments including: muscle tension or muscle aches, shortness of breath, a high heart rate, dizziness, and nausea. (Tr. at 446-47). She is always mad and angry with everybody but does not know why. (Tr. at 447). When asked how she feels about herself Plaintiff replied that she "like[s] being herself." (Tr. at 448).

C. **ALJ's Findings**

In his decision dated August 18, 2008, the ALJ found Plaintiff met the insured status

6

requirements of the Act. (Tr. at 24). Plaintiff had not engaged in any substantial gainful activity since the alleged onset date of October 31, 2001. (Tr. at 24). Plaintiff had the severe impairments of carpal tunnel syndrome, obesity, back disorder, hypertension, major depressive disorder, and anxiety disorder. (Tr. at 24). The ALJ further found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. §§ 404.1525, 416.925, 416.926. (Tr. at 24). Plaintiff had a residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with additional limitations of lifting or carrying a maximum of 20 pounds occasionally and 10 pounds frequently; standing and walking for 6 hours in an 8 hour workday; sitting for 6 hours in an 8 hour workday; no balancing, climbing of ladders, ropes, and scaffolds, and no work around unprotected heights and dangerous moving machinery. (Tr. at 25-29). The ALJ concluded Plaintiff was able to perform her past relevant work as an outpatient receptionist and a medical assistant, and therefore Plaintiff was not disabled. (Tr. at 29).

## II. ANALYSIS

A. **<u>Legal Standards</u>**

1. **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d

558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the SSI program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for DIB are identical to those governing the determination under a claim for SSI. *Id.* Thus, the Court may rely on decisions in both areas, without distinction, in reviewing an ALJ's decision. Id.

**2.     Disability Determination**

The definition of disability under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

### 3. Standard for Finding of Entitlement to Benefits

Plaintiff asks the Court to reverse the Commissioner's decision and, in the alternative, to remand for further proceedings. (Pl. Brief at 15).

When an ALJ's decision is not supported by substantial evidence, the case may be remanded "with the instruction to make an award if the record enables the court to determine definitively that the claimant is entitled to benefits." *Armstrong v. Astrue*, No. 1:08-CV-045-C,

2009 WL 3029772, *10 (N.D. Tex. Sept. 22, 2009) (adopting recommendation of Mag. J.). The claimant must carry "the very high burden of establishing 'disability without any doubt.'" *Id.* at *11 (citation omitted). Inconsistencies and unresolved issues in the record preclude an immediate award of benefits. *Wells v. Barnhart*, 127 F. App'x 717, 718 (5th Cir. 2005). The Commissioner, not the court, resolves evidentiary conflicts. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

**B.   Issues for Review**

Plaintiff presents the following issues for review:

(1) The ALJ failed to properly evaluate Plaintiff's mental impairments; and

(2) The ALJ failed to properly evaluate the limiting effects of Plaintiff's wrist/hand impairments.

(Pl. Brief at 2).

**1.   Issue One: Did the ALJ fail to properly evaluate Plaintiff's mental impairments?**

Plaintiff presents three arguments in her first issue for review. First, Plaintiff avers the ALJ failed to rate Plaintiff's mental impairment in any of the required domains as required by 20 C.F.R. §§ 404.1520a and 416.920a. (Pl. Brief at 4-5). However, the Court finds this argument without merit as the ALJ did consider the four broad-function areas established for evaluating mental disorders. Specifically, the ALJ found that Plaintiff had mild limitations in her ability to perform activities of daily living, moderate limitations in her ability to maintain social functioning, moderate limitations in her ability to maintain concentration, persistence, and pace, and no limitations relating to decomposition, consistent with the opinion of Dr. Maxwell. (Tr. at

25-28). These limitations were also posed to the VE in the ALJ's hypothetical. (Tr. at 449). Furthermore, the ALJ's decision addressed the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). *See* 20 C.F.R. §§ 404.1520a and 416.920a; (Tr. at 27-28). From a review of the record it is clear the ALJ both considered and rated Plaintiff's limitations in the four broad-function areas established for evaluating mental disorders.

Secondly, Plaintiff avers the ALJ failed to include Plaintiff's limitations in social functioning and concentration, persistence, and pace in the ALJ's RFC finding. (Pl. Brief at 8). The regulations require the Commissioner to consider the limiting effects of all of the claimant's impairments, even those that are not severe, when determining a claimant's RFC finding. 20 C.F.R. §§ 404.1545(e), 416.945(e). The ALJ has the sole responsibility for evaluating a claimant's RFC based on the record as a whole and to resolve conflicts in the evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Villa v. Sullivan*, 895 F.2d 1017, 1023 (5th Cir. 1990). Here, the Court finds the ALJ satisfied the requirements of 20 C.F.R. §§ 404.1545(e), 416.945(e) by fully considering all the limiting effects of Plaintiff's mental impairments when determining her RFC.

In his decision, the ALJ noted that "[he] considered all symptoms and the extent to which [the] symptoms [could] reasonably be accepted as consistent with the objective medical evidence." (Tr. at 25). The ALJ concluded that the evidence was "not credible to the extent that it demonstrates no capability to work." (Tr. at 27). Furthermore, the ALJ throughly discussed the medical evidence and Plaintiff's mental impairments in his opinion. (*See* Tr. at 27-28). In addition, the ALJ addressed the four broad-function areas established for evaluating mental

disorders consistent with Dr. Maxwell's assessment because Dr. Maxwell "had the opportunity to review the entire medical file," and the ALJ incorporated the limitations into his hypothetical to the vocational expert. (Tr. at 28, 449). The ALJ concluded that "[t]he ability to engage in this type and quality of activities certainly shows that she is capable of performing work related activities with the restrictions provided above." (Tr. at 27).

Thirdly, Plaintiff vaguely argues the ALJ's decision was not supported by substantial evidence because the ALJ engaged in "picking and choosing" of the evidence and failed to consider the GAF scores. (Pl. Brief at 7-9). However, the Court finds that substantial evidence supports the ALJ's determination. Moreover, the ALJ stated specific reasons for discounting two of the GAF scores.

Specifically, the ALJ "gave little weight to [the] GAF score [of 35] because it [was] inconsistent with the medical evidence as a whole," to which Dr. Maxwell agreed. (Tr. at 28). In addition, the ALJ discounted the GAF score of 50 because Dr. Ingram noted that Plaintiff's "performance on the MMPI-2 showed that she generated a profile which was probably considered invalid;" and Dr. Ingram opined that Plaintiff may be "able to learn to function in a managerial area" and has "very good reading skills." (Tr. at 28). Furthermore, Dr. Fletcher diagnosed Plaintiff with a GAF of 53, but as the ALJ pointed out, Dr. Fletcher also opined that Plaintiff's symptoms should improve with treatment. (Tr. at 27-28, 191-94).

Although Dr. Fletcher and Dr. Ingram opined Plaintiff suffered from major depressive disorder and anxiety disorder, Dr. Fletcher also stated she found no evidence of thought disorder, looseness of association, delusions, obsessions, illogical thinking, or hallucinations and believed Plaintiff's symptoms would improve with treatment. (Tr. at 191-94, 296-300). Furthermore, Dr.

12

Ingram found Plaintiff's concentration, judgment, and insight fair with no evidence of delusions or suicidal thoughts, and Dr. Maxwell opined that if the Plaintiff were her patient, she would describe her limitations on activities of daily living as "really mild," social as moderate, concentration and pace as moderate, and decompensation as zero. (Tr. at 296-300, 432-34). Therefore, the evidence on record is relevant and sufficient such that a reasonable mind might accept as adequate to support the ALJ's conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

2. **Issue Two: Did the ALJ fail to properly evaluate the limiting effects of Plaintiff's wrist/hand impairments?**

Plaintiff contends the ALJ failed to properly evaluate the limiting effects of Plaintiff's wrist/hand impairments by including no limitation in the RFC finding to account for the Plaintiff's bilateral carpal tunnel syndrome. (Pl. Brief at 10). Plaintiff claims such limitations include the ability to perform lifting at more than the sedentary exertion range, a limited ability to bend her hands, limited ability to reach, and the limited ability to perform dexterous activities. (Pl. Brief at 12). Because these limitations were not included in the ALJ's finding, Plaintiff avers the ALJ's RFC finding is not supported by substantial evidence. (Pl. Brief at 12). However, the Court finds that substantial evidence exists in the record to support the ALJ's finding and that the ALJ properly considered the record as a whole in determining Plaintiff's RFC.

As stated previously, the ALJ has the sole responsibility for evaluating a claimant's RFC based on the record as a whole and to resolve conflict in the evidence. *See Chambliss*, 269 F.3d at 522; *Villa*, 895 F.2d at 1023. Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might

accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings. *Johnson*, 864 F.2d at 343-44).

The medical record as a whole does not support the limitations Plaintiff claims. As Dr. Steel testified, Plaintiff's medical records show no limitations regarding the use of her hands from 1999 to 2006. (Tr. at 427-28). Furthermore, Dr. Patel noted Plaintiff could pick up small objects with her hands and fingers, had a full range of motion in both of her wrists, and had no swelling, effusion, redness, crepitus, or joint deformity in her wrists. (Tr. at 197-98). In addition, Parkland provided Plaintiff with wrist splints to alleviate some of Plaintiff's pain, while noting Plaintiff would benefit from skilled occupational therapy. (Tr. at 218).

### III. RECOMMENDATION

The Court concludes that the ALJ's RFC determination is supported by substantial evidence and that the ALJ properly considered all Plaintiff's impairments when determining her RFC. Accordingly, the Court recommends that the decision of the Commissioner be **AFFIRMED**.

**SO RECOMMENDED,** November 3, 2010.

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
<u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>**

      A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

                                                                                             RENÉE HARRIS TOLIVER
                                                                                            UNITED STATES MAGISTRATE JUDGE